IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PIETRO BARBIERI, ET AL.  :
         :   CIVIL ACTION
  v.       :
         :   NO. 09-3196
WELLS FARGO & CO, ET AL.  :

**SURRICK, J.**          **DECEMBER  22 , 2014**

<u>**MEMORANDUM**</u>

Presently before the Court are (1) the Motion of Defendants Federal National Mortgage Association and Wells Fargo Bank, N.A. to Dismiss Plaintiffs' Amended Complaint (ECF No. 34), and (2) Motion of Defendants MortgageIT, Inc. and Deutsche Bank, AG to Dismiss Plaintiffs' Amended Complaint (ECF No. 35).  For the following reasons, Defendants' Motions will be granted in part, and denied in part.

**I.**  **BACKGROUND**

  **A.**  **Factual Background**

This case arises out of a dispute related to Plaintiffs' home mortgage.  Plaintiffs Pietro and Jean Marie Barbieri, husband and wife, allege in the Amended Complaint that, in October 2005, they received a home equity loan from Defendant MortgageIT Inc. ("MortgageIT"), which was secured by Plaintiffs' home located at 1111 Fielding Drive, West Chester, Pennsylvania. (Am. Compl. ¶ 20, ECF No. 33.)[1]  MortgageIT was acquired by Defendant Deutsche Bank AG ("Deutsche Bank") on or about January 3, 2007.  (*Id.* ¶ 26.)  At some point after securing the loan, Plaintiffs received a notice of assignment of the loan to Defendant Wells Fargo Bank

---

[1] The Amended Complaint purports to have a copy of the Note attached.  It does not. Defendants attach a copy of the Note and Mortgage to their Motions to Dismiss.  (*See* Deutsche Resp. Ex. 1 (the "Note") & Ex. 2 (the "Mortgage"), ECF No. 35.)   The Note is executed by Plaintiff Jean Marie Barbieri only, while the Mortgage is executed by both Plaintiffs.

("Wells Fargo").  (*Id*. ¶ 29.)[2]  Plaintiffs do not recall exactly when they received notice of the loan assignment, nor do they recall to whom the loan was assigned.  (*Id*. ¶ 31.)  Plaintiffs later discovered in 2008 that the loan had been assigned either to Defendant Wells Fargo or to Defendant Federal National Mortgage ("Fannie Mae"), or to both, under terms and conditions unknown to Plaintiffs.  (*Id*.)

Plaintiffs allege that "[o]n or before October 2008, the Defendants Fannie Mae and/or Wells Fargo and through *unidentified individuals* . . . without the consent or notice to the Plaintiffs, unilaterally changed the terms and conditions of the Mortgage agreement."  (*Id*. ¶ 32.) Plaintiffs further allege that despite repeated requests for information on the "new terms" of the "amended Mortgage agreement," Defendants have refused to provide the requested information. (*Id*. ¶¶ 33-34.)  From November 2008 until the present, Plaintiffs have not received any statements from any of the Defendants regarding the obligations owed.  (*Id*. ¶ 38.)

The Amended Complaint describes communications between Plaintiffs and Defendants that occurred in May through June of 2009.  Specifically, Plaintiffs allege that, in April 2009, an unidentified representative from Wells Fargo informed Plaintiffs that Wells Fargo had no interest in the Mortgage and that all inquiries regarding the Mortgage should be directed to Fannie Mae. (*Id*. ¶ 37.)  On April 16, 2009 and April 29, 2009, Plaintiffs were informed by Fannie Mae representatives named Raymond and Kobi that Plaintiffs' loan and Mortgage were "in good order and current."  (*Id*. ¶ 38.)  The representatives also informed Plaintiffs that "the loan was in some form of forbearance program and that all further information must come from the Defendant Wells Fargo."  (*Id*. ¶ 39.)  Kobi and Raymond informed Plaintiff that admission into the forbearance program requires the borrower to make the request and sign documents.  (*Id*.

---

[2] The Amended Complaint incorrectly names Defendant Wells Fargo as "Wells Fargo & Company."  Defendants advise that the proper Defendant is Wells Fargo Bank, N.A., since Wells Fargo & Company is a holding company for its banking division.

¶ 41.)  Plaintiffs claim that they never requested information related to the forbearance program, nor signed or even received documentation concerning a loan modification.  (*Id.* ¶ 43.)

In May 2009, a Wells Fargo representative named "Bamien" informed Plaintiffs that they could temporarily suspend making mortgage payments since their mortgage had been assigned to the "Obama Financial Recovery Project" and the processing of documents for such project was pending.  (*Id.* ¶¶ 43-46.)  Bamien informed Plaintiffs that "until [they] receive the terms of [their] new mortgage, [they] are not required to make payments," and that this is why Plaintiffs were not receiving statements.  (*Id.* ¶¶ 45.)  Plaintiffs have received no documents regarding the terms of their new mortgage from Defendants.  (*Id.* ¶ 46.)   Plaintiffs claim that they never requested to be placed into this project and advised Bamien that the placement was done without their knowledge or consent.  (*Id.* ¶ 44.)  On June 16, 2009, Wells Fargo advised Plaintiffs by letter that, pursuant to their request, the loan modification had been cancelled.  (*Id.* ¶ 48.)  On June 21, 2009, Defendants placed Plaintiffs into foreclosure and accelerated the mortgage payments.  (*Id.* ¶ 49.)  Plaintiffs allege that, despite numerous requests to provide them with the terms of the mortgage modification and a statement of accounts, Defendants continue to refuse to provide this information.  (*Id.* ¶ 51.)

Plaintiffs further allege that, in June 2009, Defendants "enter[ed] false and misleading information to at least one of several credit-reporting entities."  (*Id.* ¶ 54.)  Finally, Plaintiffs allege that despite advising Defendants that Plaintiff Jean Marie Barbieri was represented by counsel—her husband, Plaintiff Pietro Barbieri—Wells Fargo continued to contact with her directly.  (*Id.* ¶ 53.)

This comprises the allegations in the Amended Complaint that relate specifically to Defendants' conduct.   A large part of Plaintiffs' Amended Complaint is general allegations

about the "serial bad acts" perpetrated by Defendants against their mortgage clients generally. (Am. Compl. ¶¶ 3-15, 58-61, 79-112.)  Plaintiffs refer to and incorporate allegations made by parties in three matters that are completely unrelated to this case:  (1) a False Claims Act lawsuit brought by the United States Attorney's Office for the Southern District of New York against Deutsche Bank and MortgageIT (the "False Claims Act Matter")[3]; (2) a putative class action against Wells Fargo and J.P. Morgan Chase related to fraudulent practices in home mortgage servicing (the "Class Action Matter")[4]; and (3) an adversary proceeding in an individual debtor's Chapter 13 bankruptcy case in Louisiana (the "Bankruptcy Matter").[5]  Many of the paragraphs in

_____

[3] In the False Claims Act Matter, the United States Government alleged that the defendants engaged in misconduct in connection with MortgageIT's participation in the Federal Housing Administration's ("FHA") Direct Endorsement Lender Program.  That program delegates authority to participating private lenders such as MortgageIT to endorse mortgages for FHA insurance.  The Government alleged that the defendants submitted false certifications stating that mortgages endorsed by MortgageIT were originated in compliance with U.S. Department of Housing and Urban Development ("HUD") rules, when in fact, they were not.  Despite the defendants' representations to HUD, the mortgages they endorsed were not eligible for FHA insurance.  Of the more than 39,000 mortgages endorsed by defendants for HUD insurance, more than one-third defaulted within two years of closing, resulting in HUD paying more than $386 million in FHA insurance claims.  (Am. Compl. Ex. A23-70 ("False Claims Act Complaint").); *see also United States v. Deutsche Bank*, No. 11-2976 (S.D.N.Y, filed May 3, 2011), at ECF No. 1.  The parties settled the matter in May 2012.  *Deutsche Bank*, No. 11-2976, at ECF No. 38.

[4] In the Class Action Matter, the plaintiff class consists of mortgage borrowers alleging that the defendants used automated mortgage loan management systems to engage in a scheme to charge unlawful, marked up fees on mortgages that have gone into default and then concealed those fees.  (Am. Compl. Ex. A90-124 ("Class Action Complaint").); *see also Bias v. Wells Fargo*, No. 12-0664 (N.D. Cal., filed Feb. 10, 2012), at ECF No. 61.  The matter is currently in discovery.

[5] The adversary proceeding centered around the debtor's attempt to recoup payments he made to Wells Fargo on his home mortgage loan.  (Am. Compl. Ex. A-125)  The Bankruptcy Court determined that Wells Fargo violated the automatic stay by assessing these post-petition payments, and that Wells Fargo was responsible for punitive damages in light of its willful, egregious conduct in connection with its assessing fees against mortgages in default.  (*Id.*); *see also Michael Jones v. Wells Fargo Home Mortgage, Inc. (In re: Michael Jones)*, No. 06-1093, 2012 Bankr. LEXIS 1450 (Bankr. E.D. La. April 5, 2012).

the Amended Complaint, in fact, are lifted verbatim from documents related to these three

actions.  Although it is not entirely clear from Plaintiff's pleadings, which, at times, are

incoherent, Plaintiffs seem to suggest that Defendants' conduct as it relates to them is part of a

larger conspiracy to defraud home mortgage borrowers and the federal government by falsely

certifying that their loans were eligible for FHA insurance, fraudulently inducing borrowers to go

into default, collecting money from the Government when those loans went into default, and

assessing default-related fees against the borrowers.

### B.   Procedural History

Plaintiffs commenced this action on July 20, 2009, alleging the following claims:  breach

of contract (Count I); fraud and misrepresentation (Count II); "Violation of the [sic] Title 12 and

15" (Count III); defamation by credit report (Count IV); and "Violation of 26 CFR 1.6001"

(Count V).  (Compl., ECF No. 1)  On October 10, 2009, Defendants filed a joint motion to

dismiss Plaintiffs' complaint.  (ECF No. 13.)  On November 17, 2009, Plaintiffs filed a motion

requesting leave to amend the complaint to assert claims under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  (ECF No. 16.)  On July 27, 2012, we

granted Plaintiffs' request to amend the complaint to assert additional causes of action.  (July 27

Mem. & Order, ECF Nos. 30, 31.)[6]

---

[6] In our July 27 Memorandum, we also denied Plaintiffs' request for expedited discovery
and granted Defendants' request for a stay of discovery pending the Court's ruling on
Defendants' motions to dismiss.  (July 27 Mem. 6-8.)  By a separate Order, the Court dismissed
without prejudice outstanding discovery motions filed by the parties as those motions were filed
prematurely.  (ECF No. 32.)

On August 13, 2012, Plaintiffs filed the Amended Complaint.[7]  In addition to the claims asserted in their original complaint, the Amended Complaint also alleges the following:  a substantive RICO claim under 18 U.S.C. § 1962(c) (Count VI); a claim for RICO conspiracy, under 18 U.S.C. § 1962(d) (Count VII); and a claim for unjust enrichment (Count VIII).  (Am. Compl.)  Attached to the Amended Complaint are multiple letters that Pietro Barbieri wrote to representatives of Defendants seeking information about his loans.  Plaintiffs also submit as exhibits, the complaints filed in the False Claims Act Matter and the Class Action Matter, as well as the bankruptcy court's opinion in the Bankruptcy Matter.

On August 27, 2012, Defendants Wells Fargo and Fannie Mae filed a Motion to Dismiss the Amended Complaint.  (Wells Mot., ECF No. 34.)  On September 10, 2012, Defendants MortgageIT and Deutsche Bank filed a Motion to Dismiss the Amended Complaint.  (Deutsche Mot., ECF No. 35.)  Attached to Defendants' Motions are copies of the Note, the Mortgage, and the Residential Loan Application executed by Plaintiff Jean Marie Barbieri.  (Wells Mot. Exs. 1-3; Deutsche Mot. Exs. 1-3.)  On October 3, 2012, Plaintiffs filed a Response to Defendants' Motions to Dismiss.  (Pls.' Resp., ECF No. 37.)  On October 31, 2012, Defendants filed Replies. (Wells Reply, ECF No. 40; Deutsche Reply, ECF No. 39.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Failure to state a claim upon which relief can be granted is basis for dismissal of the complaint.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

---

[7] The Amended Complaint is dated Friday, August 10, 2012, but was not filed on the docket until Monday, August 13, 2012.  Plaintiffs claim that they had technical difficulties filing the Amended Complaint through the Court's electronic filing system.  (Pl.'s Resp. 12.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

In determining whether dismissal is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211. Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. 663-64). When considering a Rule 12(b) motion to dismiss, we must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila*., 868 F.2d 644, 645 (3d Cir. 1989).

In addition to the Rule 8(a)(2) general pleading standard, the Federal Rules of Civil Procedure also require a heightened pleading standard for specific actions. In particular, when a litigant alleges fraud, he or she must do so "with particularity." Fed. R. Civ. P. 9(b). Rule 9(b)

commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id*.  Pursuant to this heightened pleading standard, plaintiffs must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  This requires a description of the "who, what, when, where and how of the events at issue."  *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation marks and citation omitted).  Rule 9(b) is generally considered satisfied when a defendant has "fair notice" of the charges against it.  *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1126 (E.D. Pa. 1991).

## III.    DISCUSSION

Defendants seek dismissal of all eight counts asserted by Plaintiffs.  In addition to making specific arguments with respect to each count, Defendants contend that the Amended Complaint, in general, lacks the factual specificity to meet the basic federal pleading requirements.  Defendants state that Plaintiffs improperly rely upon allegations contained in unrelated matters that have nothing to do with the conduct at issue in this case.  We will address each of Plaintiffs' claims.

### A.    RICO and RICO Conspiracy (Counts VI and VII)

Plaintiffs assert RICO claims in Counts VI and VII of the Amended Complaint.  Specifically, Plaintiffs allege that Defendants are enterprises that engaged in racketeering activity involving "conceal[ing] assessments of unlawfully marked up fees on the accounts of borrowers who have mortgage loans administered by" them.  (Am. Compl. ¶¶ 79-99.)  Plaintiffs allege that

the predicate acts that make up the pattern of racketeering activity are Defendants' violation of the mail and wire fraud statutes, 18 U.S.C. § 1341, and 18 U.S.C. § 1343, respectively.  Finally, Plaintiffs assert in Count VII that Defendants conspired to violate RICO.

Defendants contend that Counts VI and VII should be dismissed because (1) Plaintiffs lack standing to assert RICO claims, (2) Plaintiffs have failed to allege the requisite elements to state a RICO claim, and (3) Plaintiffs fail to allege an agreement necessary to maintain a RICO conspiracy claim.

### 1.    *Standing to Assert RICO Claims*

In addition to the Article III constitutional and prudential requirements to establish standing to assert a claim, plaintiffs asserting RICO claims must satisfy additional standing criteria set forth in 18 U.S.C. § 1964(c).  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). Section 1964(c) states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . may sue therefore in any appropriate United States district court . . . ."  18 U.S.C. § 1964(c).  From this language, the Third Circuit has deduced two threshold requirements for civil RICO plaintiffs to establish that they have standing: (1) the plaintiff suffered an injury to business or property; and (2) the plaintiff's injury was proximately caused by the defendant's RICO violation.  *Maio*, 221 F.3d at 483.  After reviewing the Amended Complaint and Plaintiffs' response in opposition to Defendants' Motions to Dismiss, we are persuaded that Plaintiffs do not have standing to assert RICO claims.

Injury to business or property requires "a concrete financial loss and not mere injury to a valuable intangible property interest," *id.*, which can be "satisfied by 'allegations and proof of actual monetary loss, i.e., an out-of-pocket loss.'" *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (quoting *Maio*, 221 F.3d at 483).  Prospective damages are

9

not sufficient to satisfy the standing requirements.  *Id.*  In other words, to qualify as a "concrete financial loss," the plaintiff's injury cannot be speculative or contingent on future events.  *FL Receivables Trust 2002-A v. Bagga*, 2005 U.S. Dist. LEXIS 3697, at *9-10 (E.D. Pa. Mar. 8, 2005) (citing *Maio*, 221 F.3d at 495); *see also Walter*, 480 F. Supp. 2d at 804 ("RICO liability cannot attach to future contingent damages.").

Plaintiffs concede that they have not yet suffered quantifiable damages.  (Pls.' Resp. 2 ("Plaintiffs have no quantifiable damages."); *id*. at 3 ("In truth, the only damages that the Plaintiffs can quantify is the emotional distress caused by not knowing how much we actually owe and why.").)   The crux of Plaintiffs' RICO claim is that Defendants fraudulently and deceptively caused borrowers to go into default and then assessed fees and costs against the borrowers.  Yet, nowhere do Plaintiffs allege that they themselves paid default-related servicing fees or charges to Defendants.  Nor do Plaintiffs allege that they have ever been assessed these fees or charges.  Instead, Plaintiffs allege generally that borrowers have been charged fees as a result of Defendants' fraudulent conduct.  Plaintiffs only speculate that they too have been assessed fees.  Clearly, this mere speculation is insufficient to show that Plaintiffs have suffered injury to business or property.  Plaintiffs do not have standing to assert RICO claims against Defendants.

2.     *Plaintiffs Fail to State a Plausible RICO Substantive Claim*

Even if Plaintiffs do have standing, Count VI nevertheless fails because the facts alleged are insufficient to state a plausible RICO substantive claim.  Initially, we note that the facts supporting Count VI are lifted, verbatim, from a putative class action complaint filed against Wells Fargo in California.  Plaintiffs simply substituted the parties' names to apply the facts broadly to all Defendants in this action.  As a result, it is apparent that many of the allegations in

Count VI are not in any way relevant to this case.  For example, Plaintiffs claim that, to conceal their unlawful fees, Defendants advised borrowers in statements that the fees were proper in accordance with terms of the mortgages.  (Am. Compl. ¶ 91.)  Plainly, this did not occur in Plaintiffs' case because Plaintiffs are not aware that fees were ever assessed against them personally.

In any event, putting aside the transparent plagiarism, and ignoring the irrelevancy of Plaintiffs' allegations, the claims do not come close to meeting the pleading requirements for civil RICO claims.  To succeed on a civil RICO substantive claim under § 1962(c), Plaintiffs must establish the following elements:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010).[8]  "Racketeering activity" is defined in a list of various state and federal offenses, 18 U.S.C. § 1961(1), two of which are the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  A "pattern of racketeering activity" is established with proof of the commission of at least two acts of racketeering activity, also known as predicate acts, within a ten-year period.  18 U.S.C. § 1961(5).

Where a plaintiff relies on mail and wire fraud as a basis for a RICO violation, as Plaintiffs have done here, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b)."  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).  This "requires that

---

[8] Section 1962(c) of RICO states that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).

allegations of fraud be pled with specificity." *Id*.[9]  Under this standard, Plaintiffs must plead with particularly the "circumstances of the alleged fraud," such as the "date, place or time of the alleged fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. at 223-24.  In addition, Plaintiffs must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Id*.

Plaintiffs' Amended Complaint, even with the inconsistent and unrelated borrowed allegations from the Class Action Complaint, does not meet this heightened pleading standard. Again, Plaintiffs merely allege generally that borrowers have been improperly assessed fees, but nowhere allege that they themselves have been assessed these fees.  Moreover, Plaintiffs fail to allege the predicate acts of mail and wire fraud with particularity.  Specifically, Plaintiffs provide no particularized allegations that any of the Defendants engaged in a "scheme" to defraud the Plaintiffs by charging them marked-up fees.  In addition, nowhere in the Amended Complaint do Plaintiffs, at least in any cogent or logical way, explain how Defendants' ordinary business activities such as servicing loans and charging servicing fees somehow transform into a fraudulent and illegal enterprise actionable under RICO.  Plaintiffs merely assert legal conclusions stripped from a class action complaint that appears to have no relationship to their home equity loan.   Plaintiffs' substantive RICO claim will be dismissed.[10]

---

[9] "The elements of the predicate acts of mail and wire fraud are:  'the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or wire communications in furtherance of the fraudulent scheme.'"  *Walter*, 480 F. Supp. 2d at 803 (quoting *United States v. Syme*, 276 F.3d 131, 142 n.3 (3d Cir. 2002)).

[10] Although not alleged specifically in the RICO counts, Plaintiffs allege elsewhere in the Amended Complaint that Defendants participated in a scheme to defraud Plaintiffs by declaring their loan in default and then collecting FHA insurance from the Government.  As Defendants point out, Plaintiffs' home equity loan was not an FHA-insured loan.  Plaintiffs do not dispute that their loan was not an FHA loan.  Plaintiffs' argument that Defendants committed fraud by collecting FHA insurance in relation to Plaintiffs' home equity loan is frivolous.

3.      *Plaintiffs Fail to State a Claim for RICO Conspiracy*

Finally, Plaintiffs fail to allege facts sufficient to state a RICO conspiracy claim.

Section 1962(d) of RICO addresses civil RICO conspiracy and states that "[i]t shall be unlawful

for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

section."  18 U.S.C. § 1962(d); *see also Irish v. Ferguson*, 970 F. Supp. 2d 317, 347 (M.D. Pa.

2013).  To prove a RICO conspiracy, Plaintiffs must establish two elements:  "(1) knowledge of

the corrupt enterprise's activities; and (2) agreement to facilitate those activities." *Ferguson*, 970

F. Supp. 2d at 347; *see also Salinas v. United States*, 522 U.S. 52, 66 (1997).  Plaintiffs'

Amended Complaint does not allege that there was any agreement among Defendants.  Instead,

Plaintiffs allege that Defendants "conspired" to violate section 1962(c).  This is merely a legal

conclusion.  It is woefully deficient under RICO's pleading requirements.  Count VII will

therefore be dismissed.

## B.      Defamation by Credit Report

In Count IV of the Amended Complaint, Plaintiffs claim that Defendants made

defamatory statements to credit reporting agencies.  (Am. Compl. ¶ 73.)  Plaintiffs allege that

Defendants made the statements with knowledge that they were false, and that they would be

rebroadcast to others.  (*Id*. ¶¶ 73-74.)

Plaintiffs' defamation claim fails.  The claim is pre-empted by the Fair Credit Reporting

Act (FCRA).  *See Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 499-500 (E.D. Pa. 2014)

(dismissing defamation claim against mortgage company for allegedly providing false

information to the consumer reporting agencies because the claim is preempted by section

1681t(b)(1)(F) of FCRA); *Goins v. Metlife Home Loans*, No. 12-6639, 2014 U.S. Dist. LEXIS

152014, at *22 (E.D. Pa. Oct. 24, 2014) (same).  Even if preemption did not apply, Plaintiffs fail

to allege sufficient facts to support a plausible defamation claim.

To state a claim for defamation under Pennsylvania law, Plaintiffs must plead facts to

support each of the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a).[11]

In their Amended Complaint, Plaintiffs allege that Defendants "enter[ed] false and

misleading information to at least one of several credit-reporting agencies" with knowledge that

the information was false.  (Am. Compl. ¶¶ 54, 73.)  Plaintiffs assert mere legal conclusions

without any factual support.  Plaintiffs do not allege which of the Defendants allegedly made the

statements, what the statements were, and how the statements were defamatory.  In their first

motion to dismiss, Defendants put Plaintiffs on notice that the allegations supporting this claim

were deficient in that they failed to allege the basic elements of defamation under Pennsylvania

law.  (ECF No. 13.)  Despite this admonition, Plaintiffs made no attempt to revise the claim and

merely asserted the same conclusory allegations, verbatim.  (Compare Compl. ¶¶ 49-51 with

Am. Compl. ¶¶ 73-75.)  Plaintiffs' defamation claim will be dismissed.

---

[11] Under Pennsylvania's defamation statute, if the plaintiff has met his or her burden to properly raise a claim, the burden shifts to the defendant to show "(1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and (3) the character of the subject matter of defamatory comment as of public concern."  42 Pa. Cons. Stat. § 8343(b).

**C.      Violations of Titles 12 and 15**

In Count III of the Amended Complaint, Plaintiffs broadly assert claims for "violations of

Title 12 and 15."  In support of these claims, Plaintiffs make the following allegations:

> 71.      The aforesaid statues [sic] of the United States of America sets [sic] forth
> specific requirements of the Defendants as it related to the Plaintiffs.
>
> 72.      In spite of the repeated requests and demand[s], the Defendants ha[ve]
> refused, and continue[] to refuse to meet [their] obligations to the
> Plaintiffs, all of which has resulted in serious and substantial damages to
> the Plaintiffs.

(Compl. ¶¶ 71-72.)  Defendants contend that, although it is not entirely clear, they surmise that

Plaintiffs attempt to assert a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601,

et seq., when they refer to Title 15.  Plaintiffs do not dispute Defendants' characterization of

Count III as asserting a claim under TILA.  (Pls.' Resp. 22-25.)  Plaintiffs' sparse allegations,

their undecipherable argument opposing dismissal of this claim, and their refusal to indicate

which of the 110 chapters under Title 15 of the United States Code forms the basis of their

claims, each warrants dismissal of this count.  The Court should not have to review thousands of

statutes and guess which one most appropriately applies to Plaintiffs' vague and broad-based

allegations.

Assuming that Plaintiffs intended to assert a claim under TILA, the claim is nevertheless

dismissed as time-barred.[12]  To maintain an action for either actual or statutory damages under

---

[12] TILA was enacted to provide consumers with information about their credit
transactions.  See *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)
(paraphrasing TILA's purpose "to guard against the danger of unscrupulous lenders taking
advantage of consumers through fraudulent or otherwise confusing practices").  The Act requires
disclosure of certain information, including the identity of the creditor, the amount financed, the
finance charge, the annual percentage rate, the sum of the amount financed, the schedule of
payment due dates, the amount of payments, and other information.  *Cappuccio v. Prime Capital
Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011) (citing 15 U.S.C. § 1638 and 12 C.F.R.
§ 226.18).  Section 1640(a) of TILA provides a private cause of action for consumers against
lenders who fail to make these disclosures.  15 U.S.C. § 1640(a).

TILA, the action must be brought "within one year of the occurrence of the violation."  15 U.S.C. § 1640(e).  The statute of limitations begins to run on the date of the real estate closing. *Sarsfield v. CitiMortgage, Inc*., 707 F. Supp. 2d 546, 560 (M.D. Pa. 2010) (citing *Oshiver v. Levin, Fishbein Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994)).  Here, there is no dispute that the mortgage loan at issue closed in October 2005, and that Plaintiffs filed their initial complaint almost four years later, in July 2009.

Plaintiffs argue that the statute of limitations began to run on August 27, 2009, the day that Defendants filed the instant Motions to Dismiss and the first time that Plaintiffs were provided with a copy of the Note and Mortgage.  (Pls.' Resp. 25.)  Although not entirely clear, Plaintiffs purport to be making an equitable tolling argument.  "Equitable tolling can rescue a TILA claim otherwise barred by the statute of limitations." *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 170 (3d Cir. 2010).  For equitable tolling to apply, a plaintiff must show that "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) [] the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) [] the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver*, 38 F.3d at 1387.  A plaintiff must show that they "exercised reasonable diligence in investigating and bringing" their claims. *Miller v. N.J. State Dep't of Corr*., 145 F.3d 616, 618-19 (3d Cir. 1998).

Plaintiffs seem to be arguing that, because they had not been provided with a copy of the Note and Mortgage until the instant Motions were filed, their claims should to be equitably tolled.[13]  This argument makes little sense.  The Note was a contract executed by Plaintiff Jean

---

[13] Plaintiffs support their argument by purportedly relying on information that was published on a law firm's website.  Plaintiffs have provided no citation to this information; we deem the reference irrelevant, unrelated to the arguments raised by Defendants, and frivolous.

Marie Barbieri.  That Plaintiffs failed to retain a copy of this contract at the time it was executed,

or shortly thereafter, or otherwise failed to obtain a copy of the Mortgage, which is publicly

available at the recorder of deeds office, does not in any way suggest that Defendants actively

misled Plaintiffs or prevented Plaintiffs, in some extraordinary way, from asserting their rights.

Plaintiffs' argument is without merit.  Count II of the Amended Complaint will be dismissed.[14]

> ### D.    Violation of 26 C.F.R. 1.6001

In Count V of the Amended Complaint, Plaintiff asserts a claim for "violation of 26

C.F.R. 1.6001."  The sole allegations supporting Count V are as follows:

> 76.    The Defendants are obligated pursuant to 26 CFR 1.6001 et seq. to serve
> upon the Plaintiffs a Form 1098 for the year 2008.
>
> 77.    The Defendants in spite of several requests refused and continues [sic] to
> refuse to make such disclosure.
>
> 78.    Said refusal constitutes a violation of the statues [sic] of the United States
> and the right [sic] of the Plaintiffs.

(Am. Compl. ¶¶ 76-78.)

Again, although it is not entirely clear, it appears as though Plaintiffs attempt to broadly

assert a claim under a portion of the Treasury Regulations promulgated under the Internal

Revenue Code ("IRC").  This section of the Treasury Regulations relates to tax returns and

statements and includes over 100 sub-sections.  Plaintiffs' failure to identify the source of their

claim itself justifies dismissal of Count V.  However, assuming that Plaintiffs attempt to assert a

---

[14] To the extent that Plaintiffs assert any claims under Title 12, which includes 52 separate chapters related to banks and financial institutions, such claims are also dismissed.  In both their Amended Complaint and their Response to Defendants' Motions, Plaintiffs fail to allege what statute under Title 12 they purport to assert a claim.  The overly broad claim under Title 12 is supported by a single allegation:  in June of 2009, "with no prior notice of default . . . Defendants accelerated the Mortgage and placed Debtor in foreclosure . . . which constitutes a violation of Titles 15 and 12 of the United States Code."  (Am. Compl. ¶ 49.)  This allegation, without more, is not sufficient to put Defendants on notice of the claims asserted against them, and is inadequate under *Twombly* and *Iqbal*.

claim under 26 U.S.C. § 6050H(d), and 26 C.F.R. § 6050H, as Defendants suspect is the case, the claim nevertheless fails.

Section 6050H(d) of the IRC requires companies that received mortgage interest in excess of $600 to provide the individual who made the payments with a statement showing the interest paid.  26 U.S.C. § 6050H(d); *see also* at 26 CFR § 1.6050H (proving the types of information that must be included in the statement).  Neither 26 U.S.C. § 6050H(d), nor the associated Treasury Regulations, provide individuals with a private right of action for the failure of a mortgage lender or servicer to provide a mortgage interest statement, or a IRS Form 1098, to the individual debtor.  Plaintiffs do not dispute this.  (Pl.'s Resp. 26.)  Instead, Plaintiffs invite the Court to exercise its "equitable authority" and allow Plaintiffs' claim to survive despite an absence of statutory authority permitting a private right of action.  This we will not do. Plaintiffs' claim for violation of 26 C.F.R. 1.6001 will be dismissed.

**E.     Breach of Contract**

Count I of the Amended Complaint asserts a breach of contract claim against all Defendants.  In support of the claim, Plaintiffs make the following allegations:

> 62.     On or about October of 2005, the Plaintiffs entered into a valid Contract with the Defendants, the terms of which are set forth in the Note attached hereto as Exhibit A.[15]

> 63.     The Plaintiffs performed as specified by the Contract until the Defendants unilaterally altered the terms of the Contract and refused to disclose the alterations to the Contract making performance impossible.

> 64.     The Defendants failed to perform as specified by the Contract.

---

[15] Plaintiffs did not attach a copy of the Note to the Complaint or to the Amended Complaint.  Plaintiffs contest the authenticity of the Note supplied by Defendants.  Specifically, Plaintiffs assert that the Note and Mortgage attached to Defendants' Motions to Dismiss are not the documents that Plaintiffs executed, implying that Defendants submitted altered documents. (Pls.' Resp. 16.)  Despite these representations, Plaintiffs cannot produce a copy of the Note or the Mortgage that they claim represents the documents they executed.

65.     The Plaintiffs suffered an economic loss as a result of the Defendant's breach of contract.

(Am. Compl. ¶¶ 62-65.)

Defendants argue that the breach of contract claim should be dismissed because Plaintiffs fail to allege a breach of contract claim.  Defendants also contend that Plaintiff Pietro Barbrieri lacks standing to bring this claim because he is not a signatory on the Note.  We need not address whether Pietro Barbrieri has standing because the allegations fall short of stating a plausible breach of contract claim.  In order to maintain a breach of contract action under Pennsylvania law, a plaintiff must show (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages.  *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013) (quoting *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011)).

Plaintiffs do not dispute that they entered into a valid and enforceable agreement with Defendants, and that, under the agreement, they received a home equity loan in exchange for a security interest on their West Chester residence.  What remains in dispute, however, is whether the versions of the Note and Mortgage provided by Defendants accurately reflect the agreement reached between the Plaintiffs and MortgageIT.  Whether or not the Note and Mortgage contained in the Court's record are valid, unaltered, versions of the parties' agreement is beside the point.  Plaintiffs have not alleged sufficient facts to support a plausible claim under any agreement.

Plaintiffs fail to point to any contract term or obligation of the agreement that Defendants have allegedly breached.  Plaintiffs do not identify any contractual duty encompassed in their agreement that Defendants failed to perform.  Defendants allege mere legal conclusions, such as

"Defendants unilaterally altered the terms of the Contract," "Defendants failed to perform as specified by the Contract," and "Plaintiff's suffered an economic loss," without providing any details about the terms that were altered, how they were altered, how Defendants failed to perform, or how Plaintiffs suffered an economic loss.  Bare legal conclusions are not sufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (stating that neither "naked assertions devoid of further factual enhancement," nor "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is sufficient to survive a motion to dismiss); *see also Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 535 (E.D. Pa. 2013) (rejecting breach of contract counterclaim against Wells Fargo where the plaintiffs alleged failed to support their legal conclusions with any facts).  Plaintiffs' allegations lack specificity and do not put Defendants on notice of the breach of contract claim asserted against them.  Moreover, Plaintiffs were aware that Defendants would seek to dismiss this claim for insufficient factual allegations.  Defendants sought to dismiss the breach of contract claim on this very basis in their first motion to dismiss.  Despite this admonition, Plaintiffs did not even attempt to provide additional factual support to their breach of contract claim.  (Compare Compl. ¶¶ 38-41, with Am. Compl. ¶¶ 62-65.)  Plaintiffs had the opportunity to amend their breach of contract claim, but did not.  Count I will be dismissed with prejudice.

F.      **Fraud and Misrepresentation**

In Count II of the Amended Complaint, Plaintiffs assert a claim for fraud and misrepresentation.  Specifically, Plaintiffs allege that Defendants made false statements about the "rights, requirements, benefits, and opportunities" available to them in relation to Defendants' intent to restructure Plaintiff's home equity loan.  (Am. Compl. ¶ 66.)  Plaintiffs also allege that

20

Defendants knew the statements were false, knew that Plaintiffs would rely on the statements, and "altered, modified or forged documents" in furtherance of this fraud.  (*Id.* ¶¶ 67-69.)

Defendants contend that Plaintiffs' claim should be dismissed because Plaintiffs have failed to plead the claim with particularity as required by Rule 9(b).  Defendants also argue that the claim is barred by the gist of the action doctrine.

Under Pennsylvania law, the six elements of a common law fraud action are:  (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance resulted; and (6) injury was proximately caused by reliance.  *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) (citing *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534 (Pa. Super. Ct. 2003)). In order to survive a motion to dismiss, the Amended Complaint must "plead or allege the date, time and place of the alleged fraud[,] or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)).

Viewing all of the facts in Plaintiff's favor, the Amended Complaint appears to allege a plausible claim for fraud and misrepresentation against Defendants Wells Fargo and Fannie Mae. Plaintiffs allege a misrepresentation.  Specifically, Plaintiffs state that in May 2009, a Wells Fargo representative advised Plaintiffs that their loan had been assigned to a loan modification project, and that until the processing of their new mortgage was complete, they could forbear from making mortgage payments.  Fannie Mae representatives also advised Plaintiffs that their loan was in a forbearance program.  These misrepresentations were material to the contract as they involved the parties' performance under the mortgage agreement.  Plaintiffs also allege that Defendants' representatives knew that the statements—that their loan was in a forbearance or

21

modification program—were false, and knew that Plaintiffs would rely on the false statements by foregoing making mortgage payments.  Finally, Plaintiffs allege that they relied on the statements and that injury was proximately caused by this reliance.  Specifically, Plaintiffs allege that in June of 2009, their mortgage was accelerated and they were placed into foreclosure.  At this juncture, Plaintiffs allege enough facts to establish the elements of a fraud claim against Wells Fargo and Fannie Mae.

Defendants' argument that Plaintiffs' fraud claim is barred by the gist of the action doctrine is unpersuasive.  The gist of the action doctrine "preclude[s] a plaintiff from re-casting ordinary breach of contract claims into tort claims."  *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).  The doctrine has been described as follows:

> [A]lthough mere non-performance of a contract does not constitute fraud, it is possible that a breach of contract also gives rise to an actionable tort.  To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral.  The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus.  In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*eToll, Inc. v. Elias/Savion Adver., Inc*., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (internal quotation marks, citations, and brackets omitted); *see also FL Receivables Trust 2002-A*, 2005 U.S. Dist. LEXIS 3697, at *16 ("[T]he gist of the action doctrine [] is designed to preserve the conceptual distinction between tort and contract claims—a task it accomplishes by barring tort claims that are fundamentally contractual in nature.").

We are satisfied that the doctrine does not apply here.  Plaintiffs' fraud allegations are separate and apart from allegations about Defendants' breach of the Mortgage or Note.  In their breach of contract claim, Plaintiffs allege that Defendants unilaterally altered the terms of their

agreement under the guise of a loan modification and failed to provide details to Plaintiffs about these changes. Plaintiffs' fraud claims focus on conduct by Defendants that is different than altering terms of a mortgage. Specifically, Plaintiffs allege that Defendants duped Plaintiffs to forbear from making mortgage payments by falsely claiming that their loan was being restructured, and causing Defendants to default by not making payments. The two claims arise out of separate alleged wrongful acts.

Although Count II survives dismissal as to Wells Fargo and Fannie Mae, Plaintiffs fail to state a plausible claim for fraud against Defendants MortgageIT and Deutsche Bank. Plaintiff does not allege that MortgageIT or Deutsche Bank made any false representations to Plaintiffs regarding their home equity loan. After assigning the loan to Wells Fargo or Fannie Mae, MortgageIT and Deutsche Bank are not alleged to have had any participation in the servicing of the mortgage. Nor are they alleged to have communicated with Plaintiffs about their loan at any time after the assignment. Count II will be dismissed against Defendants MortgageIT and Deutsche Bank.

### G.    Unjust Enrichment

Finally, in Count VIII of the Amended Complaint, Plaintiffs assert a claim for unjust enrichment. The paragraphs comprising this claim are lifted verbatim from the Class Action Complaint. Plaintiffs allege the following:

> 106.    The mortgage contract between Defendants and Plaintiffs and Wells Fargo to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrower, but it does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor does it allow Defendants to incur unnecessary fees.

(Am. Compl. ¶ 106.) Despite these assertions, Plaintiffs have failed to point to any portion of Note or Mortgage requiring them to pay for "default-related services." Plaintiffs have not even

alleged that fees have been assessed against them personally.  It is clear to this Court that the allegations supporting Count VIII were carelessly copied and pasted from another lawsuit and do not relate specifically to Plaintiffs' case.

In any event, Plaintiffs fail to state a plausible claim for unjust enrichment.  Under Pennsylvania law, the elements of unjust enrichment are:  "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff."  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).

Plaintiffs have not alleged facts showing that Defendants benefited in any way.  Instead, Plaintiffs merely allege that Defendants, without Plaintiffs consent, "placed Plaintiffs in a restructuring program on at least three occasions," and that lenders generally are provided financial incentives for restructuring loans through the Home Affordable Modification Program ("H.A.M.P.").  (Pls.' Resp. 29.)  Plaintiffs have no knowledge that Defendants received financial incentives through H.A.M.P. or otherwise with respect to their home equity loan.  Plaintiffs merely speculate that because Defendants have benefited from restructuring other borrowers' loans or have assessed default-related fees against other borrowers, they must have also done so with regard to Plaintiffs' home equity loan.  Such speculation does not state a plausible claim. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *Haber v. Bank of Am., N.A.*, No. 14-169, 2014 U.S. Dist. LEXIS 87614, at *32 (E.D. Pa. June 27, 2014) ("Rule 12(b)(6) requires plausibility, not mere speculation.").

IV.	CONCLUSION

For the foregoing reasons, Defendants Motions are granted in part and denied in part. When viewing all of Plaintiffs' allegations as true, and resolving any inferences in their favor, Plaintiffs fail to state a cause of action against any Defendants in Counts I and III through VIII. Plaintiffs also fail to state a claim for fraud and misrepresentation against Defendants MortgageIT and Deutsche Bank in Count II of the Amended Complaint.  Plaintiffs' allegations in Count II support a plausible claim for fraud and misrepresentation against Defendants Wells Fargo and Fannie Mae.  For these reasons, we are compelled to dismiss all counts of the Amended Complaint, with the exception of Count II as it is asserted against Wells Fargo and Fannie Mae.

An appropriate Order follows.

BY THE COURT:

_____

R. BARCLAY SURRICK, J.